IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:18-CR-00190 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | SENTENCING BRIEF |
| ROBERT JOE HENNINGS, | ) | |
| | ) | |
| Defendant. | ) | |

# Table of Contents

I.    Introduction ................................................................. 1
II.   Sentencing Procedure ................................................. 2
III.  Facts of the Case ......................................................... 3
IV.   The Advisory Guidelines ............................................ 16
V.    Section 3553(a) Analysis............................................ 19
VI.   Conclusion.................................................................. 25

"One of the fundamental duties of government is public safety, including protecting children from sexual predators."

*United States v. Abad*, 350 F.3d 793,  (8th Cir. 2003).

"[T]he government has a duty and society has a significant interest to protect children from sexual predators."

*United States v. Batchelor,* 215 WL 3385491 (W.D. Mo. 2015)

## I.    Introduction

Defendant Hennings is far more than simply a person who collected child pornography.  He gathered one of the more extensive collections of child pornography prosecuted in this District.   He traded child

1

pornography.  And he sought out children in a vain attempt to sexually assault them.  He is a sexual predator.

Based on the entire record in this case, the United States respectfully requests that Defendant Robert Joe Hennings be sentenced to a term of imprisonment within the high end of the applicable Guidelines range, followed by a life term of supervised release.  Such a sentence is needed due to the seriousness and far-reaching scope of the offense, and continuing and dire danger the defendant poses to the public, and children in particular.

## II.   **Sentencing Procedures**

The U.S. Sentencing Commission Guidelines Manual is useful in this case for helping to identify why the defendant's sentence should be substantial.  Though no longer mandatory, *United States v. Booker,* 543 U.S. 220 (2005), the Guidelines still play an important role in sentencing procedures.  A district court must begin "by correctly calculating the applicable Guidelines range," *Gall v. United States,* 552 U.S. 38, 49 (2007).  "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Id.* at 49.  The court must then consider the parties'

2

arguments and factors specified in 18 U.S.C. § 3553(a). *Gall,* 552 U.S. at 49–50. The court "may not presume that the Guidelines range is reasonable." *Id.* at 50. District courts are charged with imposing sentences that are " 'sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in" § 3553(a). The court may "in appropriate cases impose a non-Guidelines sentence based on disagreement with the [Sentencing] Commission's views." *Pepper v. United States,* 562 U.S. 476,501 (2011) (citing *Kimbrough v. United States,* 552 U.S. 85, 109–110 (2007)). However, the Court need not do so. The district court must explain the basis for its chosen sentence on the record. *Gall,* 552 U.S. at 50. "[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one." *Id.*

### III.   Facts of the Case

**Initial Investigation.** This case began when local law enforcement received a cybertip from Dropbox that one of its customers was using its services to store child pornography. Additional legwork by the FBI traced the user to Rob Hennings in Des Moines, IA. (PSR, ¶ 10).

On March 18, 2018, the FBI executed a search warrant at Hennings' residence in Des Moines. While other agents were executing the search warrant, the lead agent asked Hennings to step outside, and he agreed to do so. Eventually, Hennings consented to speak to the agent in the agent's vehicle. It was parked in the nearby Palmer's parking lot. The interview is audio recorded and transcribed. (PSR, ¶ 11).

**The Consent Interview.**  During the interview, Hennings was asked to turnover his cell phone, and unlock it. He (reluctantly) complied. During a brief on-site examination of the cell phone, child pornography was found on it. (PSR, ¶ 12).

Hennings was told he was not under arrest, was free to go, and told the lead agent wanted to first get background information, and then get into "more specific stuff." (PSR, ¶ 13).

Hennings said he had seen child pornography online, namely on Twitter. When asked if the agents doing the forensic exam are "gonna find any of that", Hennings said, "probably some old stuff that I had seen in trading." He tried to somewhat distance himself from being knowingly involved with child pornographers by suggesting he had downloaded zip

4

files in the past without knowing what was in them until they were opened. (PSR, ¶ 14).

When the agent confronted Hennings on this point, and said, "I know it's on purpose", Hennings replied, "Oh yeah, it's . . . You see something that's taboo and it's like well, let's go down that rabbit hole." (PSR, ¶ 15).

When Hennings was asked if "child porn" would be found on his electronics, he acknowledged, "Among other things, there could easily be that." He claimed not to access child pornography on his phone, but admitted he may have in the past. (PSR, ¶ 16).

Hennings gave some rambling answers and monologues about how "the cloud" works, seemingly trying, again, to distance himself from illegal activity, and seemingly trying to claim others may have posted things to his account. (PSR, ¶ 17).

When asked where the child pornography would be in his apartment, Hennings answered, "Log into any old accounts and I'm sure that . . . there's still some files and whatnot there." (PSR, ¶ 18).

Hennings was asked if he masturbated to child pornography, and answered, "Among very other things. It's a matter of if you see something

that is taboo and know it isn't supposed to exist, whatever, that's just gonna tempt people to go forward. So. Among various topics as well, that is something I've seen in the past." He added that the child pornography is part of other taboo things, and "it's a matter of if something is taboo it taunts and it provokes somebody and that is what are linked together." (PSR, ¶ 19).

Hennings eventually said he "attempted and failed" to masturbate to child pornography. He estimated he last looked at child pornography over a year ago on Twitter, because he was trading. (PSR, ¶ 20).

Hennings said his collection of child pornography was not something he created: "it's just something where it's like, okay, somebody shares . . . you see it, you store it and then you share it off with everyone else too." (PSR, ¶ 21).

**The Forensic Analysis of the Seized Media.** Data recovered from Henning's electronics contradict his claims of innocence. For example, chats he engaged in on KiK, using the name "berlinmetroscat", show he (1) admitted to liking taboo "immensely"; (2) said he like to "suck/fuck boys under 5yrs"; (3) and inquired "if you ever get another guy

in your room wanting taboo boys the age range I like, feel free to send them my direction." (December 2017). (PSR, ¶ 22).

In October 2017, also on KiK, using the same name, Hennings wrote, (1) "I don't share links any longer, but I will send you a short video or two here on KIK. What LB do you want to see? Boys sucking grown-up cock? Boys getting fucked? Boys getting sucked by older men?" (2) "I don't keep my stash readily accessible. You mentioned you don't have any LB to trade, but you're quite the hot guy, Justin. May I get a chest or cock shot of you for encouragement?" (3) "Ow! Baby!! This sure entices me. I'll sort it out tonight.  Do you prefer junior high or under 7?" The recovered chats show Hennings sent material to the other person. (PSR, ¶ 23).

The 26 files reported by Dropbox, that Hennings uploaded to its cloud storage all show minor males lasciviously exhibiting their naked genitals, masturbating themselves or others, or engaged in sex acts, with two videos showing a prepubescent female. (PSR ¶ 24).

The total amount of data eventually acquired from Dropbox by law enforcement is so large it had to be stored on its own external drive. The estimated number of child pornography videos in Hennings Dropbox account are as follows, accordingly to an informal analysis (PSR, ¶ 25):

BlackBerry folder - 250 files

Boy Gulag - 8 videos, 2 zip files and 18 folders
       B & M - 33 files
       Boy movies - 1,391 files & suborder with 4 files
       Boys - subfolder Boy movies - 1,401 files, subfolder with 4 files, Subfolder folders - 7 files
       Boys (1) - 38 files
       d - 16 files
       evil - 131 files
       Floetry 25 - 15 files
       Mexicankids - 37 files
       NEW LINK - 10 files
       st - 18 files
       Stuff - 1 files and 6 folders
              5 videos copied on January 26, 2017 - 5 files
              444 - 17 files
              Always save - 2 file
              Camera uploads - 432 files, and 1 folder
                     Aha - 2 files Trades - 5 folders
                            Boy vids - 1 file
                            Boys (1), Boy Anal, Yours - 1 file
                            The Boys, bbb - 1 video
                            Videos - 3 folders
                                  Assplay - 2 videos
                                  Fuck - 4 videos
                                  Jerk - 1 video
                                  Yng boy 22 - 1 video
                          Yours - 1 video
               UA2 - 26 files, 1 folder
                   Favs - 1 video
             Videdo 2 - 21 files, 1 folder
                   Sa, Vids - 7 videos
             Videos - 34 videos
             Videos Chubby Kids - 134 videos
             Vids - 6 videos

XxxX -171 files, some videos, some images (some of the subjects are age questionable)

Zz - 48 videos

Downloads - 9 folders

  PDaddyger@Elysium - 7 folders

   1.5yo Raamat, Rammat - 55 images of toddler, being made to play with or suck on an adult penis

   1yo fucked -empty

   3yo German boy - 49 images of boy being forced to pose or perform oral sex

   5yo boy ass fuck - empty

   Baby boy fucked by Daddy – 1 video

   Dylan gets the finger - 1 jpg (collage)

   tony pics (157) + vids - Tony pics folder - 156 pic of baby being sexually exploited; Tony vids folder - 1 video

  979@Skarem -1 video of baby

  BabyloverjazzGift - 1 zip file

  E3CurVnDu - empty

  New Folder - 1 video of baby being anally raped

  New Folder (2) - 1 video (2yo Jonas Gets Fucked Deep by Daddy)

  New Folder (3) - Unknown content

  New Folder (4) - 1 video (Baby Boy Fucked by 17yo Brother)

  Sexoinfantil123 - 1 video

Fuck - 38 videos

Geil, subfolder School - 7 folders, 2 videos, 4 jpgs

   2(1) - 10 images, 2 movies

   boys (1) - 42 images, 10 movies

   BOYS PICS AND VIDS - 76 images and 1 video boyz - 81 images of assorted penises

   Camera Uploads (1) - 57 images

   cm-42 - 5 movies

   VIDEOS SELECTOS - 6 movies

kik videos - 4 videos

mill's list - 1 folder, 34 videos
      Pics - 1 folder, 55 images (erotica of girls, a few naked girls, several naked prepubescent boys/toddlers)
      baby_fuck - various images of babies being sexually abused
not chick - 26 folders
3 photos and 566 videos copied on October 19, 2016 - 105 videos and 1 image;
93 photos and 335 videos copies on January 24, 2017; 47 images and 61 videos
444 - 21 videos
Best - 13 videos
BIK bois - 41 videos
Boy movies - 1 folder, and 1,399 videos
Am 7, September 2016 wurde(n) 40 videos kopiert_ - 4 videos Boys (1)(1) - 39 videos Correct - 71 videos Folds - 7 videos Jerk - 27 videos Jerk(1) - 31 videos
Mm - 42 images and 25 videos
New - 1 video
No abrir - 96 videos
Nuevo videos - 36 videos
Stuff - 1 video, 5 folders
      5 videos copied on January 26, 2017 - 5 videos
      444 - 17 videos
      Camera uploads (1) - 1 folder, 47 videos, 384 images
         Aha - 1 video
      Trades - 5 folders
         Boy vids - 1 video
         Boys (1) - 1 folder
            Boy Anal - 1 folder
               Yours - 1 video
         The boys – 1 folder
            BBB - 1 video
Videos - 3 folders
      Assplay - 2 videos
      Fuck - 4 videos
      Jerk - 1 video

Yng boy 22 - 1 image
Yours - 1 video
Tempp backup - 9 folders
    DarkWeb - 2 folders, 97 videos, 61 images
        To me moved - 59 videos
        7 filem - 2 videos
    Films - 1 folder, 26 videos
        Videos - 4 videos
    Fwm - 1 image of an erect penis
    Kik videos - 74 videos and 2 images
    Pictures - 109 images, cp and ce
    Tempp - 6 folders
        Animal - 1 apparently corrupted image
        Boy on boy - 10 videos, 1 image
        Boys solo - 9 videos, 1 image
        Man-Boy - 1 apparently corrupted image, 1 video (6yold.avi)
        Pictures of young boys - 1 image of a teenage boy, 1 image of a naked teenage girl, 1 corrupted image
        WhatsApp - 4 images, 1 corrupted image, 35 videos
    Videos - 4 folders
        Assplay - 7 videos
        Fuck - 10 videos
        Jerk - 31 videos
        Suck - 8 videos
    Vids - 14 videos
    Vids 5 - 2 videos
    Videos - 39 videos
    Videos(1) - 59 videos, 6 images
    Videos (2) - 49 videos
    Videos (3) - 59 videos
    Vids - 25 videos
    Wht - 4 videos, 1 folder
        3GP lagi - 3 videos
    Y - 4 videos, 6 images
    Yo - 15 videos, 2 images
    Young - 26 videos, 2 images
Scat(1) - 7 folders (none of this appears to be CP)

Me_dirty - 48 images, many of which appear to show Henning's eating feces

Scat A Solo - 26 images of the same type of thing

Shitty Weekend - 20 images and 1 video

Smegma & Cum - 8 images

Storm eat shit 02-set-2014 - 22 images showing a male eating feces

That Dirty Dozen - images showing men eating feces

Video Clips - 4 folders

    Phone quickies - 2 videos

    Shitty weekend - vids(Hi) - 2 videos Shitty weekend - Vids(Lo) - 2 videos Shitty weekend - Vids (Mid) - 2 videos

Videos cp - 77 videos and 2 images

Videos1 - 255 videos

Vids - 45 videos

Dropbox provided an "activity" spreadsheet. It shows activity between Sun, 01 Jun 2014 and Sat, 20 May 2017, or for approximately 3 years. It delineates that the files were added, and gives the file pathways, such as to the "Boy Gulag" or "Geil" folders.  (PSR ¶ 26).

Dropbox provided a "sharing" spreadsheet. It shows 23 files shared, including "Hot13yoBoyJerks(short).ogg" from the "Boy Movies" folder on 2015-03-15, and others from the "not chick", "kik videos", and "Boy Gulag" folders in March through May 2017. (PSR ¶ 27).

The FBI's CART team examined the electronic media seized from Hennings.  The FBI discovered the following pertinent evidence.

Hennings' BlackBerry had 3 image files of child pornography and 1 video. (PSR, ¶ 30).

The SD card had 30 images of child pornography, mostly of prepubescent boys, some of boys being anally raped, and 1,090 videos of child pornography, and a combination of the two contained in a zip file (13 videos and 12 images). (PSR, ¶ 31).

Among the apps loaded on Hennings' phone were "Grindr - Gay chat, meet & date", "BoyAhoy - Gay Chat & Friend", "Jack'd - Gay Chat & Dating", "Hornet - Gay Social Network" "Dropbox", "WhatsApp Messenger", "Kik", "Twitter" (PSR, ¶ 32).

The text message history leaves no doubt that Hennings' is the person with the Dropbox account in question, when self-images stored in the appropriately-named "Scat" folders are taken into consideration. On 5/3/2017, Hennings sent a message in which he describes in detail how he wants a guy with whom he can engage in scat-related sex acts. (PSR, ¶ 34).

In a text sent on June 4, 2017, Hennings explains the etiology of his pseudonym, "BerlinMetroScat." Berlin = 80s new wave band; Metro = his favorite song by the group when he started using this naming pattern at

age 15; Scat = "the 3rd random word I tack on for all adult-themed naughty-boy websites." (PSR, ¶ 35).

On May 10, 2018, less than two months after law enforcement raided his residence and seized his child pornography-filled electronic media, Hennings travelled internationally to Qatar, an Arabic-speaking nation.   He returned on May 29, 2018. (PSR, ¶ 36). This trip is of substantial concern.

This is troubling due to the nature of numerous chats Hennings exchanged via electronic media in Arabic.  It is troubling that he travelled to Qatar after the government seized the electronic devices from him that contain data in electronic form expressing, in Arabic, his sexual interest in young boys.  The FBI discovered Hennings had used his Blackberry to chat with other people in an Arabic language.   FBI had the messages translated.  The contents of the messages speak to Hennings' dangerousness to small boys in the community:

Chat date: 4/25/2016

Hennings: "what type of guys do you like?"
Other person: "Young . . . 12-16 years"
Hennings:  [Smiley face] "I like age zero to eight."
-----------------------------------------------------------------------------------------
Chat date: 5/15/2016

Hennings wrote: "I love having sex with boys younger than 5 years of age."

------------------------------------------------------------------------------------

6/7/2016

Also, a "note" on his Blackberry read –

"1) I am homosexual. 2) I am 29 years-old. 3) I am sexually attracked to males under 9 years-old. 4) I want to watch males 10-100 years-old have sex with males who are younger than they are."

------------------------------------------------------------------------------------

Chat date:  8/8/2016

Other person to Hennings:

[File received]

A young gulf boy shows off his chubby ass

Sucking a young Pakistani boy

Fucking a young khaliji boy in the car

A khalliji boy shows off

A khaliji young boy

A khaliji young boy on his stomach

Fucking a chubby young boy

Photographing a young boy before fucking

Shpwing off his full ass

An gay young boy shows off

------------------------------------------------------------------------------------

(PSR, ¶ 37).

The forensic analysis shows Hennings used Google translate for the following conversation –

1/15/2018 – "I'm looking for a young prostitute. I would like to buy a boy under 5 years of age. I'm crying behind you. I hit him because he hurts my chick."

(PSR, ¶ 38).

Hennings had almost 500 images and videos from approximately 74 different series. (PSR ¶ 41).

This evidence paints a portrait of Hennings as a person deeply-driven not only to collect an unfathomable amount of child pornography, thereby victimizing each and every child shown in the videos and photographs he collected and traded for his sexual gratification and that of others, but of a man possessed by the desire to have sexual relations with very young boys.   Hennings is a profound danger to continue collecting child pornography, and of continuing to try and sexually assault children. Hennings has been diagnosed with, among other things, Pedophilic Disorder, Nonexclusive Type; Coprophilia (an abnormal interest and pleasure in feces and defecation), A Specified Personality Disorder, and an Anxiety Disorder. (PSR ¶ 88a).  Hennings falsely denied having ever obtained child pornography. (PSR ¶ 88a).

## IV.   **The Advisory Guidelines**

The Advisory Guidelines Range is estimated at Level 40, with a base offense level of 22, and enhancements for the young age of many victims, for trading or distributing child pornography, for particularly

sadistic or depraved material, for use of a computer, and for the number of images. (PSR ¶ 47 – 52).  The adjusted offense level is 40. (PSR ¶ 56).

Issues under the Guidelines for the Court to resolve at sentencing include what impact Hennings' denial of having child pornography has on the offense level.  *See*, Forensic Evaluation, p. 7 ("On testing, Mr. Hennings denied ever having obtained child pornography and denied being sexually aroused by thoughts involving a child/minor").  This is a demonstrably false statement, made to BOP medical personnel for the purpose of sentencing, and eventually forwarded to the Probation Office for inclusion in the PSR and to the Court for its consideration at sentencing.  This statement also reflects Hennings is wavering on whether to clearly accept responsibility.  Hennings also claimed "the allegations made against him have been exaggerated."  Forensic Evaluation, p. 7.  Hennings "has rationalizations for his behaviors which keep him from taking full responsibility for his sexual actions."  Forensic Evaluation, p. 8.  Hennings "significantly minimized his offense behavior on objective testing and appears to have limited insight into his treatment needs."  Forensic Evaluation, p. 10.

The government reserves making any recommendation as to the application of the acceptance of responsibility and obstruction of justice Guidelines, USSG §3E1.1 (Acceptance of Responsibility) and § 3C1.1 (Obstruction of Justice) until the record of is more fully and finally developed at the sentencing hearing.  If is Hennings duty to "clearly demonstrate" acceptance of responsibility, and his statements in this area can best be characterized as inconsistent, at best.  If Hennings admits his conduct, and disavows his denial, he may be entitled to a 3-level reduction for accepting responsibility.   However, if Hennings continues wavering back and forth as to his guilt, he is not "clearly accepting responsibility."

United States Sentencing Guidelines Section 3E1.1(a) affords a defendant with an opportunity to have his advisory guidelines range reduced if he "clearly demonstrates acceptance of responsibility." "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." Application note 3, USSG §3E1.1. A defendant has not earned this reduction if he engages in "conduct . . . that is inconsistent with such acceptance of responsibility." (*Id.*) "Special emphasis is placed on the defendant's honesty about the factual basis

for the offense, rather than an emphasis on whether the defendant pleaded guilty or took the matter to trial." *United States v. Erhart,* 415 F.3d 965, 971 (8th Cir. 2005). *See for example, United States v. Little Hawk,* 449 F.3d 837, 839-40 (8th Cir. 2006) ("Little Hawk's acceptance of responsibility was equivocal and hedged with excuses for his behavior."); *United States v. Johnson,* 22 F. App'x 646 (8th Cir. 2001) (unpublished) (affirming denial of acceptance in a child pornography case "because [the defendant] continued to minimize his acts and describe them in a way that was both unbelievable and very self-serving" and "people with Mr. Johnson's sexual tendencies typically minimize their behavior").

## V.   **Section 3553(a) Analysis**

### **(1) The nature and circumstances of the offense and the history and characteristics of the defendant**

Hennings is a powder-key of sexual depravity. The evidence shows he yearns to have sex with young boys, and he collected countless images and videos of child pornography for his own sexual gratification and to trade with others. The nature and circumstances of the offense are troubling, and show Hennings is unrepentant and dangerous.

Likewise, Hennings history and characteristics show not just that he has been a danger to children in the past. The Forensic Evaluation

19

conduced by the U.S. Bureau of Prisons shows he suffers from various mental problems, including Pedophilia, which establish his dangerousness to others. He has no desire to control his sexual urges; indeed, he denies ever even having them.

Hennings must be incarcerated a long time for the protection of the community.

### (2)   The seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

Hennings committed a very serious crime, to an extraordinary degree. He was not just a casual collector of child pornography. He was deeply-immersed in the child pornography marketplace. Indeed, he took the time to sort and catalogue the contents of his substantial collection, creating a virtually library of child pornography. He denies knowing what he did was illegal. A lengthy term of incarceration is needed, under these circumstances, to promote respect for the law and provide a just punishment for Hennings' particularly egregious conduct.

### (3)   The need to afford adequate deterrence to criminal conduct

Given Hennings' attempts to minimize the illegality of his offense conduct, a lengthy sentence is called for both to deter others from

producing and trafficking in child pornography and, to the extent possible, to deter this defendant. *See United States v. Lukasavitz,* 2013 WL 1703326 (E.D. Mich. 2013) (deterrence matters in child pornography cases). Clearly, Hennings conviction – in and of itself – has not inspired him to engage in any self-critical insight or effort to change his ways. He is in denial.

### (4) The need to protect the public from further crimes of the defendant

Protection of the public may be the most critical factor at sentencing in this case. Nothing in this record shows Hennings is willing or able to be rehabilitated. Thus, the only way to keep him from collecting child pornography and trading it, and from trying to have sex with minors, is to keep him locked up.

### (5) The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Hennings, unquestionably, needs significant and ongoing mental health and correction care. It is currently unforeseeable as to when his need for such help might possibly end.

## (6)   The guidelines, policy statements, and the statutory punishment

The statutory punishment in this case was set by Congress at between 5 and 20 years' incarceration, due to the seriousness of the offense. A life term of supervised release is authorized, with a minimum of 5 years under supervision after any term of incarceration.

It is entirely appropriate for the district court, even in the era of "advisory" Sentencing Guidelines, to consider and give significant weight to Congress and the U.S. Sentencing Commission's policy statements that federal courts should generally avoid sentences below the guidelines range for persons who commit sex offenses against minors. *United States v. O'Conner*, 567 F.3d 395, 398 (8th Cir. 2009) (citing 18 U.S.C. § 3553(b) (2) and USSG §5K2.0 (b)).

The government sees no need to discuss the often-repeated critiques of the child pornography guidelines because some of them were the result of Congressional directives. The district may, but is not required to, reject USSG §2G2.2 on policy grounds, regardless of whether the guideline at issue is based on a policy judgment of Congress or the Sentencing Commission's empirical approach. *United States v. Ultsch*, 578 F.3d 827, 830-831 (8th Cir. 2009). In this case, the guidelines,

promulgated as a product of both Congressional and Commission action, are based on sound policies. The fact that Congress has deemed it appropriate to increase the penalties for child pornographers is not a mitigating factor. In fact, given the prevalence of child pornography prosecutions, it could fairly be argued that the current punishments are not a sufficient deterrent, and should actually be enhanced. The fact Congress directed higher sentences in child pornography cases actually makes the advisory guidelines in this area closer to mandatory minimums, because the law-making body has directly spoken as to what it considers to be the appropriate factors to be considered at sentencing.

### (7)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

This "factor often favors a sentence within the advisory guidelines range." *United States v. Munjak,* 669 F.3d 906 (8th Cir. 2012), and it does so here.

### (8)   The need to provide restitution to any victims of the offense

The government requests restitution, and will be providing the Court with a separate document substantiating its request.

**(9) Variance**

The government is unaware of any grounds for a variance.

**(10) Supervised release.**

A lengthy term of supervised release is appropriate, unless and until the defendant's apparent mental health issues are under control, and he has succeeded in sex offender treatment.

Several courts of appeal have affirmed lifetime terms of supervised release for possession of child pornography. *United States v. Young*, 502 F. App'x. 726, at *3 (10th Cir. 2012) (citing *United States v. Daniels*, 541 F.3d 915, 923 (9th Cir. 2008)) (upholding lifetime of supervision for possession of child pornography in part because the policy statement accompanying USSG §5D1.2(b)(2) "reflects the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public"); *United States v. Planck,* 493 F.3d 501, 505 (5th Cir. 2007) (upholding life term of supervised release as reasonable sentence for conviction of possession of child pornography); *United States v. Presto,* 498 F.3d 415, 420 (6th Cir. 2007) (same).

Congress authorized a lifetime term of supervised release for child pornography cases because

> [of the] long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.

H. R. Rep. No. 108–66, at 49–50 (2003) (Conf. Rep.), reprinted in 2003 U.S.C.C.A.N. 683, 684.  The defendant's propensity for criminal conduct is demonstrably not likely to disappear within a few years of release from prison.

The government seeks a life term of supervised release.

## VI.   Conclusion

"Child pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008).  The sentence here must reflect the harm done by Hennings, and the danger he continues to pose.  The government respectfully recommends a sentence at the high end of the applicable Guidelines range, and a life term of supervised release.

Respectfully Submitted,

Marc Krickbaum
United States Attorney

By:     /s/ Craig Peyton Gaumer
        Craig Peyton Gaumer
        Assistant U.S. Attorney
        United States Courthouse Annex
        110 East Court Avenue, Suite 286
        Des Moines, Iowa 50309-2053
        Tel: (515) 473-9300
        Fax: (515) 473-9292
        Email: craig.gaumer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2020, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail _____ Fax _____Hand Delivery

  X   ECF/Electronic filing    ____Other means

UNITED STATES ATTORNEY

By: /s/  Carla Ralph
      Paralegal Specialist