UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>Vs.<br><br>ROBERT JOE HENNINGS,<br><br>Defendant. | CASE NO. 4:18-CR-00190-RGE-CFB- 1<br><br><br>DEFENDANT'S SENTENCING MEMORANDUM |

COMES NOW the Defendant, through undersigned counsel, and in support of his recommendations for sentencing states the following:

## PROCEDURAL HISTORY

On August 28, 2018, the defendant, Robert Joe Hennings, was Indicted by Grand Jury on the following counts: Count 1) Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); Count 2) Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); Count 3) Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1); and Count 4) Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Pursuant to a plea agreement, the Defendant pled guilty to Count 3 as stated above on January 11, 2019. The government agreed to dismiss Counts 1, 2, and 4 at the time of sentencing pursuant to the previously mentioned plea agreement. Also pursuant to a plea agreement between the parties, the government agreed to recommend a three-level reduction for acceptance of responsibility as provided in the United States Sentencing Guidelines (USSG) § 3E1.1. Mr. Hennings guilty plea was accepted by the Court on January 28, 2019, and he was adjudicated guilty at that time.

A Presentence Investigation Report (PSR) was ordered and a draft provided to the parties on March 11, 2019. The Defendant filed a list of objections and corrections on April 9, 2019. The defense filed a Motion for Psychiatric or Psychological Evaluation on April 26, 2019. The government filed a response to the same on May 14, 2019 indicating it had no objection to the request. A hearing was held telephonically on May 15, 2019 and an order was entered granting the motion on May 16, 2019. The Defendant was eventually transported to a Federal Detention Center in Miami, Florida for the ordered psychological evaluation. An evaluation was completed, and detailed results were provided to the parties and the Court on or about October 3, 2019. Sentencing was then scheduled for November 25, 2019. A Final PSR was filed with the court on November 1, 2019. After reviewing the Final PSR and in response to the same, the Defendant requested sentencing be continued so as to address any unresolved issues in writing. Sentencing was continued to January 24, 2020.

## FACTS

Briefly stated, Mr. Hennings has accepted responsibility for his actions by entering a plea of guilty as discussed above. The Court has accepted his plea and adjudged Mr. Hennings guilty. Mr. Hennings raises several unique issues relevant to sentencing including the distinction between possessing URLs that could eventually lead to questionable material including child pornography and possessing actual photographic images and videos of child pornography. Mr. Hennings contends that he possessed groups of letters, numbers, and characters that, when plugged into the Internet, could lead to questionable content. The possession of the string of characters that, when used in a manner such as with the Internet, was not unlawful and the content of websites linked on the other end of character strings should not be attributed to the Defendant or his conduct.

Mr. Hennings specifically contends that the following enhancements should not apply largely because he possessed potential access to the material rather than the material itself: the Defendant distributed material in exchange for any valuable consideration, but not for pecuniary gain (USSG § 2G2.2(b)(3)(B); USSG § 2G2.2 Application Note 1); for material involving the portrayal of sadistic or masochistic conduct or the sexual abuse or exploitation of an infant or toddler (USSG § 2G2.2(b)(4); USSG § 2G2.2 Application Notes 1, 3); and the enhancement based on the involvement of 600 or more images (USSG § 2G2.2(b)(7)(D); USSG § 2G2.2 Application Note 6). Mr. Hennings possessed a large number of URLs that provide access to specific locations on the Internet. The content within that location is added, deleted, edited, etc. by the manager or administrator of the URL of which Mr. Hennings was not.

Mr. Hennings has one arrest and subsequent criminal conviction for Theft of property valued at less than $100 in 2008. This conviction resulted in a $100 fine. Mr. Hennings is privileged to enjoy ongoing support from his immediate family.

**LAW AND ARGUMENT**

The sentencing proceeding is a 3-step process that begins with a calculation of the Sentencing Guidelines range. *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). The court then makes "an individualized assessment based on the facts presented" while also considering all of the factors listed in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38 (2007). The final step allows the district court substantial latitude to vary from the Sentencing Guidelines by comparing them with the § 3553(a) factors and presenting support for variance and the extent thereof. *See United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009); *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009); *Braggs*, 511 F.3d at 812. This memorandum will focus on the appropriate calculations based on the USSG. Secondly, this

memorandum will discuss the application of § 3553(a) factors and the application for a downward variance.

1. <u>URL/Hyperlinks versus Actual Visual Depictions – Number of Images Attributable to the Defendant.</u>

Mr. Hennings pled guilty to Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). Therefore, the appropriate Base Offense Level is 22. USSG § 2G2.2(a). Further enhancements that are applied for Specific Offense Characteristics are then determined using USSG § 2G2.2(b). Mr. Hennings has objected to the application of some of these enhancements. However, his objections are largely based on one foundation: that his possession of URL links is distinguishable from possession of content that could be contained, or observed, in those URL links should a user decide to follow the link.

Mr. Hennings is not disputing the number of actual images, videos, and visual depictions that were discovered on various devices and memory cards. Rather, Mr. Hennings' objection is to the Court taking into consideration any URLs or hyperlinks that were eventually found to have been associated with child pornography and unlawful illicit images. Mr. Hennings believes those URLs or hyperlinks do not meet the definition of images, video, or other visual depiction used in the calculation of the number of images.

In *United States v. Stulock*, the Eighth Circuit Court of Appeals held that "one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the *image*." 308 F.3d 922, (8th Cir. 2002) (emphasis added). The Eighth Circuit later distinguished *Stulock* in *United States v. Koch*, wherein the appellate court found knowing possession was found due to files that were manually created and contained illicit images of

child pornography. 625 F.3d 470, 479 (8th Cir. 2010). Given that the *Koch* court found a distinguishing factor in determining guilt or innocence hinging on images that may have been automatically saved versus manually downloaded and saved suggests that there may be further distinguishing factors. *See also id.* Mr. Hennings' contention is that one such further distinguishing factor is the possession of a URL or hyperlink to a website compared to the possession or administrative rights or access to a website, thereby putting it within a person's dominion and control. Such dominion and control would give a person the ability to not only access and view actual images, videos, or other visual depictions of illicit child pornography, but for the purposes of sentencing in a case like this one, it would presumably give a person the ability to upload/share, edit, and remove material.

While not controlling, other circuit courts have similarly engaged in discussions related to what constitutes possession and receipt of child pornography; specifically, there has been a great deal of discussion regarding the "knowing" element of possession and/or receipt of child pornography. While the issue of guilt is not before the Court in Mr. Hennings' case as he has already entered a knowing and voluntary plea to Receipt of Child Pornography, it is logical to consider Mr. Hennings' intent and state of mind regarding distinguishable and distinct alleged characteristics or offense conduct for which he is being sentenced.

In *United States v. Dobbs*, the Tenth Circuit reversed a defendant's conviction and sentence for Receipt of Child Pornography on the basis that the existence of visual depictions on a computer and in an auto-caching, or auto-saving, file is not sufficient to find the defendant received those depictions knowingly. 629 F.3d 1199, 1205 (10th Cir. 2011). It goes without saying, then, that those depictions are not attributable to the defendant.

5

In *United States v. Kuchinski*, the Ninth Circuit Court of Appeals held that for the purposes of sentencing in a child pornography case, the sentencing court should only consider those visual depictions that the defendant knowingly receives and/or possesses. 469 F.3d 853, 861 (9th Cir. 2006). The Court goes on to explain that this is proven when a defendant "seeks [child pornography] out over the internet and then downloads them to his computer." *Id.* Furthermore, the Court offers an alternative method of proof when in "the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it." *Id.* (quoting *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006); *United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002)).

Given the two alternatives acknowledged by the Ninth Circuit to suggesting images be attributed to a defendant, Mr. Hennings contends that any URL link that he possessed that coincidentally was linked to illicit imagery that he was not privy to altering in some form should not be considered for the purpose of sentencing. The PSR suggests that approximately 468,505 images are to be attributed to Mr. Hennings' culpability as a result of what was discovered on Mr. Hennings' Dropbox account. PSR at para. 25. However, Mr. Hennings believes these were simply URL links to other locations on the internet that Mr. Hennings did not, in fact, have any dominion or control over and had not downloaded the contents of. The images that could be found by following the *links* Mr. Hennings had access to, should not be attributed to Mr. Hennings because no evidence exists that he viewed, downloaded, or otherwise sought out these links or the contents thereof. He simply, and admittedly, categorized them by title and saved the potential access point to them which the Defendant suggests is distinguishable.

The United States suggests in the opening paragraph of its sentencing brief that Mr. Henning "gathered one of the more extensive collections of child pornography prosecuted in this

District." Government's Sentencing Brief at p. 1. Mr. Hennings admittedly received child pornography unlawfully, and he admitted to that during his change of plea hearing before this Court. However, he did not admit to possessing and/or receiving over 550,000 images as the government suggests. *See* PSR at para. 39. Any "images" that were discovered by law enforcement following URLs or hyperlinks to internet locations should not be attributed to Mr. Hennings and should not be considered for the purposes of sentencing. Additionally, Mr. Hennings contends that any remaining images found on his SD card were merely present as a result of an auto-saving feature or were previously deleted as unwanted materials and were automatically recovered by his phone unbeknownst to him. *See* PSR at para. 31. He does not believe the approximately 82,000 images on the SD card should be attributed to him. Mr. Hennings has taken responsibility for the images and videos found on his BlackBerry phone amounting 78 images. *See* PSR at para. 30.

2. Specific Offense Characteristics/Sentencing Guidelines Enhancements.

    a. Enhancement for Distributing for Valuable Consideration.

An enhancement for distributing child pornography for valuable consideration was made for a five-level enhancement for the Defendant distributing child pornography in exchange for any valuable consideration, but not for pecuniary gain. PSR at paras. 14, 20, 21, 23, 27, 49; U.S.S.G. § 2G2.2(b)(3)(B). Similar to previous arguments, the Defendant contends that sharing URLs or hyperlinks is not relevant conduct to be considered for the purposes of this enhancement.

Additionally, Mr. Hennings claims that any actual distribution of video or imagery otherwise presented by the government was not so distributed for the purpose of valuable consideration. This enhancement is further explained in Application Note 1 of U.S.S.G. §2G2.2

as applicable when "the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, *such as other child pornographic material, preferential access to child pornographic material, or access to a child.*" (2018). This terminology is slightly different from that of previous versions referring to distribution for a "thing of value." See U.S.S.G. §2G2.2, n. 1 (2014). The Eighth Circuit had previously defined a "thing of value" as "anything of valuable consideration" while citing further application note 1 and providing examples that identified defendants receiving, or expecting to receive, child pornography as the "thing of value" or "valuable consideration." *United States v. Burman*, 666 F.3d 1113, 1118 (8th Cir. 2012) (quoting U.S.S.G. §2G2.2, n. 1 in the identification of examples of trading child pornographic materials); *United States v. Bastian*, 603 F.3d 460, 466 (8th Cir. 2010) (describing "thing of value" and "valuable consideration" as the active sharing, through file-sharing technology, of child pornography with the intent of receiving additional child pornography); *United States v. Griffin*, 482 F.3d 1008, 1011-12 (8th Cir. 2007) (including the sharing of child pornography through file-sharing programs within the context of a "thing of value" for sentencing purposes in a Receipt and Possession of Child Pornography case).

The Eighth Circuit has further clarified the phrase "valuable consideration" as it pertains to the altered language in the U.S.S.G. stating "this court's contrary precedents concerning [U.S.S.G.] § 2G2.2(b)(3)(B) have been superseded by amendment." *United States v. Hansen*, 859 F.3d 576, 577-78 (8th Cir. 2017). The Court was specifically referring to the Sentencing Commission's rejection of "the view that a defendant's knowing use of file-sharing software generally satisfies the requirements for a five-level enhancement [related to distribution of child pornography for valuable consideration]." *Id.* at 577.

There is no evidence that Mr. Hennings intended to receive child pornography from any source. There is no evidence that he solicited child pornography or otherwise attempted to receive such "valuable consideration" within the meaning of this sentencing enhancement. Rather, Mr. Hennings requested a "chest or cock shot" from another individual he thought to be a consenting adult male. *See* PSR at para. 23. Because Mr. Hennings did not intend to receive "valuable consideration," this enhancement does not apply.

    b. <u>Enhancement for Material Sadistic or Masochistic Conduct/Exploitation of an Infant or Toddler.</u>

Without being redundant, the Defendant's position regarding application of these enhancements encompasses the same argument as presented above. Images or videos meeting this definition or category were not actually saved, downloaded, or otherwise associated with the Defendant as identified in paragraphs 25 and 28 of the PSR. Rather, the Defendant possessed a library of hyperlinks that, when followed, may have portrayed this type of material. The Defendant was not, however, in possession of this material and had no control over the content of the website that he had saved a portal to. Some Circuit Courts have held that a person can receive child pornography without downloading it if they "seek[] it out and exercise[] dominion and control over it." *Romm*, 455 F.3d at 998 (citing *United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002), *cert denied*, 537 U.S. 1223, 123 S. Ct. 1335, 154 L. Ed. 2d 1082 (2003)). The Eleventh Circuit found that by viewing or saving illicit images for a period of time and having the ability to manipulate those images during that time, those images can be attributed to the person's conduct. *United States v. Bilus*, 626 Fed. Appx. 856, 871 (11th Cir. 2015) (quoting *United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir. 2011)). Further, a Defendant's possession of

illicit images through automatic saving features of a device are not enough to attribute the images to the Defendant. *Dobbs*, 629 F.3d at 1205 (10th Cir. 2011).

Contrary to the situations cited above, Mr. Hennings' hyperlinks provide no sufficient evidence that he accessed, viewed, or otherwise controlled any content, including images and/or videos, that may have been attached to those links. Therefore, any images portraying sadistic or masochistic conduct or sexually abusing or exploiting an infant or toddler that were found through the use of a hyperlink that Mr. Hennings may have stored should not be associated to him. The PSR suggests paragraphs 25 and 28 provide sufficient foundation for this enhancement. For the foregoing reasons, Mr. Hennings disagrees.

    c.  <u>Number of Images.</u>

The government contends Mr. Hennings' activity is associated with over half a million images which would otherwise support an enhancement for the offense involving 600 or more images. PSR at para. 39. However, Mr. Hennings again draws the Court's attention to the application of this enhancement based on conduct associated with URLs, hyperlinks and auto-saving technology rather than actual images. He contends, therefore, that any visual depiction based on his possession of a URL or hyperlink should not be attributed to him for sentencing purposes. The files associated with Dropbox activities were not actually images but were links to content that law enforcement later found to be images. These hyperlinks account for about 468,505 images that Mr. Hennings believes should not be attributed to him. PSR at para. 25.

Additionally, Mr. Hennings contends that any visual depictions that were automatically saved, downloaded, or otherwise cached to his device or memory card should not be attributed to him. There is no distinguishing evidence suggesting that Mr. Hennings specifically sought out, discovered, and/or specifically saved child pornography to an SD card. Electronic devices with

external storage components including, but not limited to, SD cards, external hard drives, thumb drives, CDs, etc., can be easily set to automatically store contents to the external component so as not to disrupt the operating system, prevent filling up the internal storage system, etc. There is no evidence that Mr. Hennings affirmatively took the steps to ensure child pornography was received and saved onto the SD card found associated with his device. Rather, it is plausible that the card was simply a storage mechanism that countless people use to ensure the device continues to operate at an optimal level by automatically storing content without any specific action by the user. This type of action would alleviate Mr. Hennings of responsibility of an additional 82,767 images.

In total, Mr. Hennings believes 551,272 of the images allegedly associated with his conduct should not be attributed to him. Rather, only 78 images (three images and one video) constitute relevant conduct for the purposes of this enhancement. This would constitute only a 2-level increase.

Finally, Mr. Hennings believes the enhancement based on the number of images is outdated and defies the original purpose of the enhancement similar to his argument regarding the use of a computer. Without being redundant, Mr. Hennings contends that enhancement based on the number of images promotes a maximum period of incarceration with limited, if any, regard for the policy behind it or the individual facts and circumstances associated with a specific defendant. He believes the Court should not apply this enhancement based on policy disagreement.

3. <u>Acceptance of Responsibility.</u>

The PSR author did not attribute a three-level decrease due to Mr. Hennings' "statements contrary to acceptance of responsibility" during a psychological evaluation at Federal Detention

Center (FDC) Miami, Florida. PSR at para. 58. However, Mr. Hennings has accepted responsibility of his role in the offense. He has, in fact, been fully cooperative throughout the process. Mr. Hennings has explained his understanding of a complicated world of technology, file-sharing software, and the internet. Furthermore, Mr. Hennings has participated in his own defense and has openly suggested that certain images and photos are simply in a format that do not allow him to take responsibility for them. He is, essentially, placed in a catch-22 predicament where he could accept full responsibility for everything alleged, whether actually true or not, or he can explain his perspective and legal understanding without denial of any law enforcement findings and face the potential of the recantation of the Court's two-level reduction and the government's recommendation for an additional one-level deduction for acceptance of responsibility.

It should be noted that the forensic psychologist authoring a report of findings regarding Mr. Hennings suggested no less than eight diagnostic impressions ranging from substance abuse to victimization to sexual interests in children. Forensic Evaluation at p. 8. Prior physical abuse, substance abuse, psychiatric treatment, and various behavioral observations were made throughout the report and contributed to the findings of the forensic psychologist. While the government suggests that Mr. Hennings has not accepted responsibility, it should be noted that he voluntarily participated in this process. He answered questions and actively participated in various sessions through the psychiatric evaluation. Once again, he had the choice of answering questions honestly from his perspective and without denying law enforcement findings, or he could have fully accepted the allegations despite any legal reservations he may have had.

In determining what type of rehabilitation may be appropriate and effective for a defendant, it seems logical that a true expression of feelings should be encouraged. Mr. Hennings provided this unequivocally.

4. <u>Variance from the Calculated Sentencing Range</u>

Mr. Hennings sentencing range was based on a Total Offense Level of 40 and Criminal History category I. Therefore, the associate range would be 292-365 months' imprisonment. However, following the calculation of the sentencing guideline range, an analysis of the factors present in 18 U.S.C. § 3553(a) must be conducted to determine "any appropriate departures from the guidelines." *United States v. Shannon*, 414 F.3d 921, 923 (8th Cir. 2005). A departure is simply an assertion that the Total Offense Level is incorrect or inappropriate and should be altered to accurately fit the facts of a case. *See United States v. Chase*, 451 F.3d 474, 482 (8th Cir. 2006). A variance, on the other hand, is an analysis of the following 3553(a) factors from which the Court may vary the sentence regardless of the Total Offense Level or the Criminal History Category based on the factors of 3553(a). *See United States v. Vandebrake*, 771 F. Supp. 2d 961, 999 (N.D. Iowa 2001). Mr. Hennings claims that following an appropriate guidelines calculation, a variance herein is warranted.

The factors of consideration set forth in 3553(a) are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established;

(5) any pertinent policy statement

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (2019). Each consideration pertinent to this case will be addressed in turn.

 a. <u>Nature/Circumstances of Offense and History/Characteristics of Defendant</u>

  The nature and circumstances of this offense are, without a doubt, serious. Mr. Hennings recognizes, acknowledges, and appreciates that. This case, on its face includes over a half-million illicit images of unfathomable material. However, Mr. Hennings contends that the nature and circumstance of the offense attributed to him is much different. Mr. Hennings is a homosexual that participated in several group chats and utilized several phone applications to communicate with other members within his virtual community. They would use to the applications to discuss things personal and/or sexual in nature as well as things that were of routine and casual conversation. There was an online, file-sharing library of links that Mr. Hennings categorized in a way that made sense to him. However, this library did not consist of actual images and Mr. Hennings did not affirmatively seek out, download, or view those images. Rather, he pursued his own homosexual, adult sexual desires occasionally using those links to obtain content gratifying to him.

  The government seems to focus a great deal on the extensive categorization of Mr. Hennings' online library. Contrary to this supposed inference, there is little evidence Mr. Hennings did anything other than organized various links. The nature of this offense, in general terms, is extremely serious. The nature of Mr. Hennings' involvement in this offense is much less so.

Additionally, Mr. Hennings enjoys the continued familial support of those around him. His immediate family is aware of his current position and remains supportive of him. Mr. Hennings has had an unfortunate series of events in his own life including being the victim of sexual assault as a child. He has suffered from various forms and levels of emotional, mental, and physical abuse but has worked hard and persevered throughout his life to attain meaningful goals in his professional life. He's proven that he can be a positive and contributing member to the community and retains an intellect that could be used for good in the future.

b. <u>Need for Sentence Imposed</u>

As previously stated, this offense is very serious in nature and requires a consequence commensurate with the offense. However, the defendant has minimal criminal history with a single previous misdemeanor conviction. He has never been convicted of, or even charged with, a felony offense before now. His mere involvement in this process has provided him with an adequate level of deterrence from future wrongdoing of this type. Additionally, the required prison term and required term of supervised release will adequately prevent Mr. Hennings from future involvement with activity of this nature.

Beyond specific deterrence of the defendant, the Court will rightfully be concerned with general deterrence of the community, rehabilitation of the defendant, and punishment for the wrongs committed. Generally, 100% of persons convicted of this offense in the Southern District of Iowa were imprisoned in 2018. PSR at para. 131. Mr. Hennings' incarceration will be no different and will adequately convey to potential perpetrators that this type of conduct, even if occurring for the very first time, will not be tolerated.

The defendant has received a psychological evaluation while in custody for this offense and will receive additional treatment pursuant to that evaluation. Rehabilitation using treatment and supervision will be adequate for this specific case.

Finally, Mr. Hennings will undoubtedly be punished. He's been incarcerated for several months and will be incarcerated for many more. The level of punishment is at the Court's discretion and cannot exceed 20 years by statute. Mr. Hennings involvement with sexually gratifying homosexual phone applications and the categorization of hyperlinks should be distinguished between that of an individual that was actively seeking out, viewing, saving, and using images contained in those hyperlinks for his sexual gratification. Mr. Hennings was not doing that but was only seeking out lawful forms of sexual gratification. While his manner of seeking the sexual gratification for which he desires was unlawful, his intended end result was other than that of persons most culpable in child pornography offenses.

c. <u>Sentencing Range.</u>

The sentencing range calculated by the PSR suggested Mr. Hennings be sentenced to 292-365 months' imprisonment. PSR at 116. However, if the Defendant's calculations in this memorandum are correct, Mr. Hennings correct guidelines range will include the following:

- Base Offense Level: 22
- Prepubescent Minor: +2
- Distribution for Valuable Consideration: Not Attributable
- Sadistic or Masochistic/Abuse or Exploitation of Infant or Toddler: Not Attributable
- Use of Computer: +2
- Offense involving 600+ images: Not attributable

- o Defendant concedes a two-level increase is attributable based on 78 images (*see PSR at para. 30*): +2
- Acceptance of Responsibility: -3
- Total Offense Level: 25

The resulting Guidelines Range is a sentence of 57-71 months' imprisonment. This offense requires a mandatory minimum period of incarceration of 60 months.

Given the above calculations, the Defendant believes a period of incarceration of 60 months is appropriate.

d. Pertinent Policy Statements.

This particular offense, as has been alluded to throughout this memorandum, begs the Sentencing Guidelines to promote a sentence at or near the maximum possible period of incarceration. Computers are seemingly inherent in this offense; yet, an enhancement applies to increase the sentencing range for anyone convicted of this offense. The number of images can catapult an offense level by two to five levels with the involvement of between one and four videos. Enhancements increase the sentencing range when there is, albeit arguably, an exchange of nearly anything as long as the "thing" exchanged actually has some unspecified and unparticularized "value." Each of these enhancements seems to categorically apply to nearly all child pornography cases. *United States v. Harper*, 787 F.3d 910, 912-13 (8th Cir. 2015) (stating "many enhancements in child pornography cases have become the norm (high number of images, use of computer, etc."))._Therefore, the sentencing commission's intent to separate the most culpable from the least culpable offenders is destroyed by the inherent determination that nearly all offenders related to this offense are the "most culpable."

5. Downward Variance Determination

In determining whether to vary from the Sentencing Guidelines, the court must consider the above-mentioned factors and "impose a sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). While there must exist a reason to depart from the Sentencing Guidelines, the "high volume of downward variance is strong testimony to the fact that the Guidelines cannot be routinely applied in a fair way when it comes to this particular crime." *United States v. Buesing*, 615 F.3d 971, 974 (8th Cir. 2010) (referring to possession of child pornography). Mr. Hennings contends that upon a calculation of the sentencing range based on his perspective as detailed above, his individualized circumstances warrant a sentence within the calculated range and near the mandatory minimum sentence of 60 months' imprisonment.

In the alternative that the Court finds Mr. Hennings' argument less than compelling and attributes some or all of the detailed enhancements, Mr. Hennings would suggest that his case warrants a downward variance to a period of incarceration at or near the mandatory minimum of 60 months' imprisonment.

6. Restitution.

Mr. Hennings had previously objected to the PSR's statements regarding restitution and simply contends that he is not the proximate cause of harm caused to those victims requesting restitution. PSR at para. 43. The United States Supreme Court has held that "[r]estitution is proper under §2259 only to the extent the defendant's offense proximately caused a victim's losses." *Paroline v. United States,* 572 U.S. 434, 434, 134 S. Ct. 1710, 1713, 188 L. Ed. 2d 714, 719 (2014). Mr. Hennings does not believe he is proximately responsible for all of the restitution claimed in this case. *See* PSR at 43.

WHEREFORE, the undersigned requests that this Court calculate the Defendant's recommended Sentencing Guideline Range in accordance with this memorandum or, in the alternative, grant a downward variance from the calculated Sentencing Guideline Range in accordance with this memorandum; along with such other further relief as the Court deems just and proper in the premises.

RESPECTFULLY SUBMITTED:

/s/ Aaron D. Hamrock
Aaron D. Hamrock (AT0003107)
McCARTHY & HAMROCK, P.C.
1200 Valley West Drive, Ste. 400
West Des Moines, IA 50266
PH: (515) 279-9700
FAX: (515) 279-8355
EMAIL: aaron@mccarthyandhamrock.com
ATTORNEY FOR DEFENDANT.

Original Filed Electronically.

Electronically Copied to:

Craig P Gaumer
United States Attorney's Office- DSM
110 E Court Ave., Ste. 286
Des Moines, IA 50309
craig.gaumer@USDOJ.GOV

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon each of the attorneys of record of all parties to the above-entitled cause herein at their respective addresses disclosed on the pleadings of record on January 20, 2020.

By: ☐ U.S. Mail ☐ FAX
☐ Hand Delivered ☐ Overnight Courier
☐ Federal Express ☒ Other: Electronically

Signature: /s/ Amanda M. Neff