IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:18-CR-00190 |
| v. | ) ) ) | |
| | ) | RESTITUTION REQUEST |
| ROBERT JOE HENNINGS, | ) ) | |
| Defendant. | ) | |

Defendant Robert Joe Hennings generally contests his obligation to pay restitution to victims of his child pornography crimes. He claims he is not the proximate cause of the harm suffered by the victims. (DCD 88, p. 18). Hennings surely contributed to the harm suffered by each of the victims whose sexual exploitation he collected in images and videos. The government, therefore, files this brief in support of its request for restitution in this case.

The government will provide the Court with the materials supporting these claims, referenced in the PSR, for its consideration at sentencing, understanding that they have previously been provided to the Court for its review by the Probation Office.

## I.     The Statutory Scheme

Hennings' sentencing materials do not address the current statutory scheme concerning restitution that is applicable to his case. It strongly suggests that he be ordered to pay restitution to the victims who have requested it, under the facts of his case.

On December 7, 2018, the President signed into law the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("the Act"), Pub. L. 115-299, 132

1

Stat. 4383 (Dec. 7, 2018), which governs restitution in child pornography cases for crimes committed after its enactment. Here, because Hennings was charged with his crimes prior to enactment of this statute, it provides guidance. This case is governed by preexisting law. However, the CPVAA of 2018 states courts may consider the $3,000 minimum restitution amount, but are not bound by it.

Among other things, the CPVAA of 2018 amended 18 U.S.C. § 2259, which calls for mandatory restitution for victims of child pornography crimes. Under the Act, the court must "determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim." 18 U.S.C. § 2259(b)(2)(A). After making that determination, the court must "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." *Id.* at § 2259(b)(2)(B).

The term "full amount of the victim's losses" means costs incurred by the victim in the following categories:

(A) medical services relating to physical, psychiatric, or psychological care;

(B)   physical and occupational therapy or rehabilitation;

(C)   necessary transportation, temporary housing, and child care expenses;

(D)   lost income;

(E)   reasonable attorneys' fees, as well as other costs incurred; and

(F)   any other relevant losses suffered by the victim as a proximate cause of the offense.

18 U.S.C. § 2259(c)(2)(A) – (F). The court is prohibited from declining to order restitution due to the economic circumstances of the defendant, or due to the fact the victim has, or is entitled to, insurance compensation. 18 U.S.C. § 2259(b)(4)(B).

## II.     Case Law

The seminal case interpreting the previous version of § 2259 is *Paroline v. United States*, 572 U.S. 434 (2014). *Paroline* clarified the following aspects of the statute:

- Section 2259 is intended to compensate victims caused for harms caused by the offense of conviction. 572 U.S. at 445.

- Restitution is proper under the prior version of § 2259 "only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 448,

- "[T]he victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child pornography crimes, including possession, assuming the perquisite of factual causation is satisfied." *Id.* at 449.

- The cause of the victim's general losses is the trade in her images by child pornographers. And each defendant who receives, possesses, and distributes the images are part of that cause, for he is one of those who viewed the illicit images. While it is not possible to identify "a discrete, readily definable incremental loss [most defendant's]" caused, it is indisputable that every defendant is part of the "overall phenomenon" that caused a victim's damages. *Id.* at 456-457. A "victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Id.* at 457. Harms of this type are a primary reason why child pornography is outlawed. See *Ferber*, 458 U.S., at 759, 102 S.Ct. 3348. "The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy. And there can be no doubt Congress wanted victims to receive restitution for harms like this."

- If it is shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images, but it is impossible to attribute a particular amount of those losses to the individual defendant, a court applying § 2259 should order restitution in "an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor . . . and the entirety of the victim's general losses from the trade in her images, which are the product of the acts of thousands of offenders." *Id.* at 458-59. It should not, however, be a token or nominal amount. The required restitution should be "a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id.* at 458-9.

- Sentencing courts may, as a starting point, determine the "amount of the victim's losses caused by the continuing traffic in the victim's images . . . then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role" *Id.* at.460.

The *Paroline* Court explained the district court could also look at "restitution sought and ordered in other cases" and that the process would involve discretion and estimation. *Id.* at 462. The restitution claims made in this case fall within the scope of the foregoing authority.

The Eighth Circuit's interpretation of § 2259 after *Paroline* is instructive, and supports the reasonableness of awarding each of the victims here at least $3,000 in

4

restitution.

In *United States v. Bordman*, 895 F.3d 1048 (8th Cir. 2018), the Court of Appeals held the district court did not abuse its discretion by ordering the defendant to pay $3,000 in restitution to a victim. The court looked at the aggravating fact that the child pornography was in video form, the harm to the victim, and the "very aggravating" nature of the video. The court noted that in "prior cases applying *Paroline*, we have upheld awards of restitution ranging between $2,500 and $3,000." *Id.* at 1057. The restitution amount was upheld.

In upholding a conservative $40,000 restitution order in *United States v. Hoskins*, 876 F.3d 942 (8th Cir. 2017), the Court of Appeals confirmed that mandatory restitution damages under § 2259 include the future costs of medical treatment and therapy. *Id.* at 945-946.

In *United States v. Knapp*, 695 Fed.Appx. 985 (8th Cir. 2017), the Court affirmed $11,000 in restitution, divided among four victims,

In *United States v. Funke*, 846 F.3d 998 (8th Cir. 2017), the Court affirmed a restitution order of $3,500 on a defendant who possessed multiple images of a specific child victim.

In *United States v. Emmert*, 825 F.3d 906 (8th Cir. 2016), the Court of Appeals affirmed a $500 restitution order, even where a defendant did not document each expense, because the district court was entitled to rely on its basic knowledge of medical expenses, and likely underestimated the costs of the medical and psychological treatment the victim needed.

In *United States v. Beckmann,* 786 F.3d 672 (8th Cir. 2015) another $3,000 per victim restitution order was affirmed, based on victim impact statements, restitution ordered in prior cases, the number of potential defendants involved, and Beckmann's relative culpability.

The foregoing body of authority confirms that restitution in a minimum amount of $3,000 per victim is appropriate in a typical child pornography case where the defendant contributes to the ongoing harm to the victim by collecting a visual depiction of the child's sexual exploitation or abuse.

### III. The Restitution Requests.

The final PSR in this case sets out information concerning restitution requested by victims. (PSR ¶ 43).

- Feb21 requests $5,000 in restitution for the victim known as Donatello. The Defendant possessed 2 files from this series. (PSR ¶ 41).

- The victim of the Lighthouse Series requests $10,000 for the victim know as Maureen. The National Center for Missing and Exploited Children advises the victim had material from this series in his collection.

- Marineland requests $15,000 for the victim identified as Sarah. The Defendant has two files from this series. (PSR ¶ 41).

- SpongB requests $58,415 for victim known as Andy. The Defendant had 15 files from this series. (PSR ¶ 41).

- Sweet Sugar requests $5,000 each for the victims identified as Ava, Mya, and Pia. (PSR ¶ 43) The Defendant had one file from this series. (PSR ¶ 41).

Though Defendant agreed in his Plea Agreement to pay restitution, he objected to Paragraph 43 of the PSR. Thus, the Court must decide this issue. The government requests restitution in the following amounts.

A.  The advocate for a young man known as Donatello, a victim of the Feb21 series, requests $5,000 in restitution for the victim. His attorney notes he has suffered $20,000 of damages and projected damages, minus attorney's fees. His victim impact statement is dated November 13, 2017. The victim's doctor notes projected therapy will cost approximately $19,000. The government requests $3,000 in restitution for this victim.

B.  The advocate for a female know as Maureen, a victim of the Lighthouse series, requests $10,000 for the victim. Her attorney and doctor estimate Maureen's total losses proximately caused by the ongoing circulation of her images, including medical and psychological treatment ($180,000), transportation ($20,000), medication ($10,000), educational ($250), childcare ($3,000), wage loss ($72,500) and costs and attorney's fees ($20,000) over the next five (5) years to be in excess of $440,000. The government requests $3,000 in restitution for this victim.

C.  The advocate for the victim in the Marineland series requests $15,000 for the victim identified as Sarah. This request is less than 1% of Sarah's losses. The full amount of her general losses documented to date include the costs of psychological counseling of $448,552.00, lost income of $2,273,436.00, and out of pocket costs and expenses of $34,061.68 incurred relative to restitution documentation. The total losses to date are $2,756,049.68. Sarah has received $443,259.31 against these claimed losses. The government requests no less than $3,000 in restitution.

D.  The advocate for the victim in the SpongB series requests $58,415 for victim known as Andy, namely $25,000 for the victim's losses, and $33,415 for

preparing the restitution request. However, the materials provided in support of this request are from 2014, and not current. The government requests $3,000 of restitution for this victim.

E. The advocate for the victim in the Sweet Sugar series requests $5,000 each for the victims identified as Ava, Mya, and Pia. Pia's, Ava's and Mya's losses include the expense of needed ongoing psychological treatment, educational accommodation, lost income, out of pocket costs for documenting their losses, and attorney's fees.. Their lawyer documents attorney's fees of $10,187.13, but this statement is as of March 22, 2017. The victims request compensation for the costs of ongoing counselling. The government recommends restitution of $3,000 per victim.

Respectfully Submitted,

Marc Krickbaum
United States Attorney

By:   /s/ Craig Peyton Gaumer
Craig Peyton Gaumer
Assistant U.S. Attorney
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2020, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail  _____ Fax  _____Hand Delivery

 X   ECF/Electronic filing     ___Other means

UNITED STATES ATTORNEY

By: /s/ *Carla Ralph*
    Paralegal Specialist